OPINION *Page 2 
{¶ 1} Appellant-father James Patrick appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of his minor child to Appellee Stark County Department of Job and Family Services ("SCDJFS").
 {¶ 2} This appeal is expedited and is being considered pursuant to App. R. 11.2, which provides:
 {¶ 3} "(A) Appeals in actions described in this rule shall be expedited and given calendar priority over all other cases, including criminal and administrative appeals. The Ohio Rules of Appellate Procedure shall apply with the modifications or exceptions set forth in this rule."
 {¶ 4} This appeal shall be considered in accordance with the aforementioned rule.
 STATEMENT OF THE FACTS AND CASE {¶ 5} The relevant facts leading to this appeal are as follows.
 {¶ 6} On January 12, 2007 the Stark County Department of Job and Family Services (hereinafter "SCDJFS") filed a complaint, in 2007 JCV 00056, seeking temporary custody of Cierra Patrick, born February 23, 2006, alleging the child to be dependent, neglected or abused.
 {¶ 7} After a shelter care hearing on January 16, 2007, the court ordered the child to remain in mother's custody with the SCDJFS having an order of protective supervision. *Page 3 
 {¶ 8} On January 17, 2007, an emergency review was held as mother could not be located and father indicated he placed the child with his daughter. After the hearing, the court granted temporary custody to the SCDJFS.
 {¶ 9} On March 16, 2007 the trial court held a hearing on the initial complaint. Neither parent appeared for the hearing. SCDJFS presented evidence and Cierra was found dependent, a case plan was adopted by the court and the order of temporary custody was continued.
 {¶ 10} This case plan included: completing a parenting assessment; substance abuse treatment and evaluation; anger management treatment and follow the recommendations of each evaluation. (T. at 5-6).
 {¶ 11} Appellant failed to comply with portions of his case plan and did not engage in many services until the time the motion for permanent custody was filed. (T. at 5-6).
 {¶ 12} On December 7, 2007, SCDJFS filed a motion for permanent custody of Cierra.
 {¶ 13} The SCDJFS filed an amended motion on December 13, 2007.
 {¶ 14} Appellant did not complete the parenting assessment until January, 2008 and tested positive for cocaine on multiple occasions. (T. at 6). Appellant acknowledged using crack cocaine as recently as December, 2007, a month before the permanent custody trial and consuming alcohol the day before his parenting assessment. (T. at 20). Appellant failed to engage in anger management treatment until two weeks prior to the permanent custody trial. (T. at 17). *Page 4 
 {¶ 15} Appellant acknowledged incidents of domestic violence occurred between him and Cierra's mother. (T. at 20).
 {¶ 16} Appellant's failed to attend the majority of his scheduled visits with Cierra, attending only 19 of 42 scheduled visits. (T. at 8).
 {¶ 17} During his parenting assessment, the same month as the permanent custody trial, Appellant acknowledged he was not in a position to care for Cierra. (T. at 24). Appellant informed the examiner that he requested that his oldest child take custody of Cierra. (T. at 24).
 {¶ 18} On February 7, 2008, a hearing on the motion for permanent custody was held before the trial court.
 {¶ 19} On February 19, 2008, the trial court journalized its finding of facts and conclusions of law which granted permanent custody of Cierra to the SCDJFS.
 {¶ 20} Appellant timely filed a notice of appeal and herein raises the following Assignments of Error:
 ASSIGNMENTS OF ERROR {¶ 21} "I. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF CIERRA PATRICK TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE ITS DETERMINATION THAT THE REASONABLE EFFORTS TO ASSIST THE PARENT TO COMPLETE THE CASE PLAN AND THAT THE DEPARTMENT USED REASONABLE EFFORTS TO PREVENT THE REMOVAL OF THE CHILDREN WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. *Page 5 
 {¶ 22} "II. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF CIERRA PATRICK TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE ITS DETERMINATION THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 23} "III. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF CIERRA PATRICK TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE ITS DETERMINATION THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I. {¶ 24} Appellant-father first argues that the trial court's determination that SCDJFS used reasonable efforts to assist the parents to complete the case plan and that reasonable efforts were used to prevent the removal of the child was against the manifest weight of the evidence. We disagree.
 {¶ 25} R.C. § 2151.419 Hearings on efforts of agencies to preventremoval of children from homes
 {¶ 26} "(A)(1) Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency *Page 6 
that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. If the agency removed the child from home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount.
 {¶ 27} "(2) If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home:
 {¶ 28} * * *
 {¶ 29} "(e) The parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections."
 {¶ 30} As stated above, R.C. 2151.419(A)(2)(e) provides that when a parent has previously had parental rights involuntarily terminated with respect to a sibling of the *Page 7 
child, the court is mandated to make a "determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal * * *, and return the child to the child's home.
 {¶ 31} Based on the foregoing, we find that the agency was not required to make reasonable efforts to reunify in the instant case because Cierra's mother has had parental rights involuntarily terminated with respect to Cierra's three half-brothers. (T. at 5).
 {¶ 32} However, upon review of the record we do find that SCDJFS did attempt to reunify the family. The parents were given two copies of the case plan. (T. at 8). On two separate occasions they were also given a separate checklist of the places they needed to go and appointments they needed to keep which included the addresses and phone numbers. Id. Assistance was also provided in coordinating appointments, rescheduling and sorting out services. Id. Additionally, Cierra was picked up from her foster placement and brought to the agency for visits with her parents. (T. at 8, 10).
 {¶ 33} Based on the foregoing, Appellant-father's first assignment of error is overruled.
 II., III. {¶ 34} We will address Appellant-father's second and third assignments of error together.
 {¶ 35} In his second and third assignments of error, Appellant-father argues that the trial court erred in finding that the minor child could not be placed with Appellant within a reasonable time and that the best interests of the child would be served by the granting of permanent custody. We disagree. *Page 8 
 {¶ 36} Revised Code § 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. This statute provides as follows:
 {¶ 37} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 38} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 39} "(b) The child is abandoned.
 {¶ 40} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 41} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 42} Ohio's present statutory scheme requires a court, in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. 2151.414(B)(1)(a), supra), to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[following the placement of the child outside the child's home and notwithstanding *Page 9 
reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." See R.C. 2151.414(E)(1); In reBender, Stark App. No. 2004CA00015, 2004-Ohio-2268.
 {¶ 43} In the case sub judice, the trial court found that the minor child cannot or should not be placed with either parent within a reasonable time.
 {¶ 44} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. § 2151.414(B)(1)(a), supra), a trial court is to consider the existence of one or more factors under R.C. § 2151.414(E), which includes:
 {¶ 45} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 46} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes *Page 10 
the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;"
 {¶ 47} In the case sub judice, in addition to finding, pursuant to R.C. § 2151.414(B)(1)(a), that the children could not or should not be placed with either parent within a reasonable time, the trial court also found, pursuant to R.C. § 2151.414(B)(1)(d), that the children had been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months.
 {¶ 48} Upon review of the record, we find that the trial court's finding that the child cannot and should not be placed with Appellant-father within a reasonable period of time is not against the manifest weight of the evidence. Testimony was adduced at the hearing that Appellant-father has not substantially complied with his plan and has failed to correct the conditions which caused Cierra to be placed in temporary custody. Testimony was presented that Appellant-father admitted that he has a chronic substance abuse problem. Appellant father stated that he does not want to be Cierra's residential parent. The caseworker also testified that there were ongoing concerns of domestic violence as well as Appellant-mother's failure to consistently take her medication for bipolar condition based on her belief that she is no longer bipolar.
 {¶ 49} The trial court also heard testimony as to the failure of Appellant-father and the mother to attend the scheduled visits with Cierra. Of the forty-two (42) scheduled visits, the mother only attended twenty-one (21) and Appellant-father attended only nineteen (19). *Page 11 
 {¶ 50} Additional testimony was presented as to the mother's utilities being turned off and her rent not being current.
 {¶ 51} Lastly, the trial court considered the fact that the mother had her parental rights terminated involuntarily with regard to Cierra's siblings.
 {¶ 52} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. § 2151.414(D). These factors are as follows:
 {¶ 53} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 54} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 55} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 56} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 57} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 58} It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the *Page 12 
impact the court's determination will have on the lives of the parties concerned." In re Mauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In re Awkal (1994), 95 Ohio App.3d 309, 316, 642
N.E.2d 424.
 {¶ 59} The trial court, in making its best interest determination, found that "despite the minimal bond that may have developed between any parent and Cierra Patrick, the harm caused by severing the bond with the parents is outweighed by the benefits of permanency in the child's life" and that Cierra's "need for a legally secure permanent placement cannot be achieved without a grant of permanent custody to the agency."
 {¶ 60} In making said determination, the trial court had before it testimony from Aimee Thomas of Northeast Ohio Behavioral Health and Jennifer Hafner, who was the ongoing caseworker, in addition to the report of the guardian as litem (GAL).
 {¶ 61} Ms. Thomas testified that Appellant-father has an extensive substance abuse history and that he had used crack cocaine as recently as December, 2007. (T. at 20). Additionally, she testified that Appellant-father admitted that his relationship with Cierra's mother was physically violent at time and that there had been episodes of domestic violence. Id. She further testified that Appellant has a criminal history, having two outstanding warrants at the time of the hearing. (T. at 21). She testified that his prognosis at maintaining sobriety is poor. (T. at 24).
 {¶ 62} Ms. Hafner testified that Cierra has no developmental or behavioral problems and that she is bonded with her foster family and is flourishing in foster care. (T. at 34). She further testified that Cierra does not have a strong bond with either of her biological parents. Id. *Page 13 
 {¶ 63} Ms. Hafner also testified that two of Cierra's half-brothers were adopted by Paul Justice. Upon learning that the agency had an open case with a sibling of his two adopted children, Mr. Justice brought the two boys to Ohio from Georgia to visit with Cierra. (T. at 34-35). Mr. Justice has expressed an interest in Cierra and remains in contact with her via e-mail, photographs and telephone calls. Cierra formed an attachment with her half-brothers and Mr. Justice. Id.
 {¶ 64} Ms. Hafner concluded that the boys would benefit from adoption based on the parent's lack of compliance with their case plans, the child's lack of a bond with her parents and their inability to care for her. (T. at 36-37).
 {¶ 65} The trial court also had before it the Guardian ad Litem report wherein the GAL recommended permanent custody of Cierra to the SCDJFS.
 {¶ 66} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758.
 {¶ 67} Based on the foregoing, we find the trial court's conclusions pursuant to R.C. § 2151.414(B) are supported by the weight of the evidence.
 {¶ 68} We further find the trial court's grant of permanent custody of the minor child to SCDJFS was made in the consideration of the child's best interests and did not constitute an error or an abuse of discretion. *Page 14 
 {¶ 69} Appellant's Second and Third Assignments of Error are overruled.
 {¶ 70} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.
By: Wise, J., Farmer, J., concurs., Hoffman, P. J., concurs separately.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed. *Page 15